

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DAWN M. ZITZKA and JAMES ZITZKA )
individually and on behalf of JANE DOE 1 )
and JANE DOE 2, their minor daughters, and )
JOHN DOE, their minor son, )
                                                 ) No. 07 C 0949
               Plaintiffs, ) Magistrate Judge Schenkier
                                                 )
vs. )
                                                 )
THE VILLAGE OF WESTMONT, a municipal )
corporation; POLICE OFFICERS JAMES )
SCHLICHER, MICHAEL DALE, DAVID )
NEWTON, GREGORY COMPTON, TERRENCE )
BOYER and JOHN BRIGHT, )
                                                 )
               Defendants. )

## MEMORANDUM OPINION AND ORDER[1]

       This case stems from the investigation of an alleged rape of a minor child on December 31, 2005, in the Village of Westmont, Illinois. The plaintiffs – Jane Doe 1, her parents, and her siblings – filed this suit on February 20, 2007, against defendants, the Village of Westmont ("Westmont") and individual police officers employed by Westmont, in both their individual and official capacities. In the first amended complaint ("the Complaint"), plaintiffs assert federal claims for violation of various federal constitutional rights brought pursuant to 42 U.S.C. § 1983 (Counts I-IV), and supplemental claims for violations of Illinois state law (Counts V-IX). Defendants have moved to dismiss two of the federal claims, those stated in Counts II and III, asserting violations of equal protection and due process, as well as all of the state law claims in Counts V, VI, VII, VIII, and IX

---

[1] On August 30, 2007, by full consent of the parties and pursuant to 28 U.S.C. § 626(c), the Executive Committee has reassigned this case to this Court for all proceedings, including the entry of final judgment (doc. ## 42-43).

(doc. # 32). For the reasons set forth below, the Court grants defendants' motion in part and denies it in part.

I.

We begin with the relevant legal standards governing motions to dismiss, standards that have recently taken a slightly new twist. Motions to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) seek to show that the plaintiff has failed to state a claim upon which relief can be granted, thereby requiring dismissal of that claim. For a plaintiff's claim to survive a Rule 12(b)(6) motion to dismiss, the complaint only needs to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). For 50 years, this standard has been applied in the backdrop of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In this Circuit, that standard had been interpreted to generally require a plaintiff to do "no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of." *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005).

In *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964-65 (2007), the United States Supreme Court rejected the proposition that a complaint may survive dismissal merely by satisfying this notice function. The Supreme Court acknowledged that on a literal reading of *Conley's* "no set of facts" language, "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts to support recovery.'" 127 S.Ct. at 1968. The Supreme Court said that this was not what the *Conley* Court meant by employing that phrase, and that "after puzzling the

2

profession for 50 years, this famous observation has earned its retirement." *Id.* at 1969. In place of the *Conley* formulation, the Supreme Court in *Bell Atlantic* set forth what the Seventh Circuit has characterized as "two easy-to-clear hurdles" that must be cleared to survive a Rule 12(b)(6) motion to dismiss:

> First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests". . . . Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court.

See *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, No. 06-3436, 2007 WL 2215764, *2 (7th Cir. 2007) (citations omitted).

Thus, the analytical lens through which a court must determine whether the second hurdle, plausibility, has been satisfied by the plaintiff has shifted since *Bell Atlantic*. Previously, a defendant was obliged to show that a plaintiff could prove no set of facts that would entitle the plaintiff to relief. By contrast, after *Bell Atlantic*, a plaintiff now has the burden of showing that the allegations (if true) create not just the possibility, but the plausibility, of entitlement to relief. *Bell Atlantic*, 127 S.Ct. at 1966. That will be enough to allow a complaint to survive dismissal – even if the likelihood of proving the allegations is very remote. *Id.* at 1965 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 326 (1974). But, the Seventh Circuit explained in *Concentra*, "it is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, . . . by providing allegations that 'raise a right to relief above the speculative level,' . . . " *Concentra*, 2007 WL 2215764, * 3 (emphasis in original) (citations omitted).

On the other hand, when a motion to dismiss is based on a statute of limitations defense, it is "irregular" to dismiss a claim as untimely. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir.

3

2006). That is because the statue of limitations is an affirmative defense, *see* Federal Rule of Civil Procedure 8(c), and "a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations." *Hollander*, 457 F.3d at 691 n.1. That said, dismissal based on the statute of limitations is appropriate "when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Id.*

With these legal standards in mind, we now review the claims that defendant seeks to dismiss.

## II.

As always, we take the allegations of the complaint as true for purposes of determining whether they state a claim for relief under Rule 12(b)(6). *Bell Atlantic*, 127 S.Ct. at 1965. Plaintiffs allege that the following events took place and give rise to their claims.

On December 31, 2003, Jane Doe I, a minor child of James and Dawn Zitzka, was raped at an underage drinking party (Compl., ¶ 16). Westmont, through its police department, subsequently conducted an investigation which did not meet with Mr. and Mrs. Zitzka's approval. Plaintiffs allege that the defendants "failed to adequately investigate the rape of young Ms. Doe" and that Mrs. Zitzka complained "to various Village officials including Mayor Bill Rahn, Chief of Police Randy Ticha, Officer James Schlicher and, ultimately, the Village Board" (*Id.*, ¶ 17).

Plaintiffs initially expressed their complaints by placing signs in their automobile windows criticizing the police department. In October 2004, Dawn Zitzka placed a sign in her automobile window which stated: "The Westmont Police Do Not Serve or Protect" (Compl., ¶ 22). This sign remained there until the end of May 2005 (*Id.*, ¶ 23). On October 31, 2004, James Zitzka placed a different sign in his automobile window stating: "The Westmont Police Do Not Serve or Protect.

4

Why Are We Paying Their Salaries?" (*Id.* ¶ 24). Plaintiffs allege that they subsequently "became more vocal about the Village's failure to fully investigate the rape of young Ms. Doe and the underage drinking party," and as a result, "became the objects of intimidation, harassment and retaliatory actions at the hands of each of the Defendants" (*Id.*, ¶ 28).

Plaintiffs allege that on March 10, 2005, the defendants began a retaliatory campaign. Plaintiffs claim that on this date, "officers Compton and Boyer invaded the Zitzka home while Plaintiff Dawn Zitzka and her children were inside. Upon entering the residence, the police officers threatened Plaintiff Dawn Zitzka that they would arrest her if she ever called the State's Attorney's Office again to complain about the Police Department. These threats were made in the presence of young children, Plaintiffs Jane Doe 2 and John Doe, who were terrified" (Compl., ¶¶ 32-33).

After that, marked and unmarked police cars allegedly began to stake out the Zitzkas' home. On or about April 12, 2005, "a marked police car was parked adjacent to the Zitzka family home and on information and belief the occupants were observing the Zitzka and Doe Plaintiffs" (Compl., ¶ 34-35). This type of surveillance allegedly recurred (this time with an unmarked police car) on April 29, 2005, one day after Ms. Zitzka attended a public Village Board Meeting (April 28, 2005), and spoke out against the police department's handling of her daughter's rape investigation (*Id.*, ¶¶ 18, 36). Plaintiffs further allege that various police officers continued this type of surveillance (and intimidation) on various other dates in May through July 2005 (*Id.*, ¶¶ 37, 40, 43).

Although the plaintiffs do not provide specific dates, apparently sometime during May 2005 slurs were written on the sidewalk in front of the Zitzka home about Jane Doe I. When Ms. Zitzka

complained to the police, she alleges that they told her to paint over the slurs herself, which she did (Compl., ¶¶ 50-51). Plaintiffs allege that matters further escalated from there:

> Approximately three weeks later, Defendant police officers Newton, Schlicher and Dale arrested her, on or about June 16, 2005, [and] incarcerated and criminally prosecuted her for "destruction of public property." When questions were raised as to the validity of the arrest warrant while Plaintiff Dawn Zitzka was in jail, officer Schlicher obtained and presented to Plaintiff Dawn Zitzka two additional arrest warrants against her. One for trespass to land for an alleged incident that occurred two weeks earlier when Plaintiff Dawn Zitzka was on a public street and another for alleged telephone harassment.

(*Id.*, ¶ 52). On June 18, 2005, police officer John Bright arrested Plaintiff Dawn Zitzka again, allegedly on the same warrant that was used to arrested her two days earlier (*Id.*, ¶ 53). Also on June 18, the same officer allegedly arrested Mr. Zitzka for an alleged assault against vandals who defaced the Zitzka home and battered Mr. Zitzka (*Id.*, ¶ 54).

Plaintiffs allege that the charges were fabricated to give the defendants an "opportunity to punish [p]laintiffs . . . for their speech" against the police department (Compl., ¶ 55). Plaintiffs allege that, to this end, "[n]otices of at least one of the numerous arrests of Plaintiff Dawn Zitzka appeared in the local newspaper" (*Id.*, ¶ 56); and, "[a]s a result, Plaintiffs James and Dawn Zitzka's reputations in the community were irreparably damaged and their neighbors began to ostracize them" (*Id.*, ¶ 58).

Plaintiffs allege that six criminal prosecutions have been filed and pursued against plaintiffs James and Dawn Zitzka. Plaintiffs allege that at the time the first amended complaint was filed (June 15, 2007), three prosecutions had been terminated in their favor, while three remained pending (Compl., ¶ 59).[2]

---

[2] In their brief opposing dismissal, plaintiffs represent that two of the three pending prosecutions were dismissed in their favor as of July 23, 2007 (Pls.' Mem. at 9).

6

Plaintiffs do not allege any specific conduct by the defendants between July 26, 2005 and May 3, 2006 (although they allege generally that the challenged conduct occurred between the Spring of 2005 and May 31, 2006) (Compl. ¶ 30). Plaintiffs allege that on May 3, 2006, Officer Schlicher drove by their house slowly and glared at them (*Id.*, ¶ 41). They also allege that on May 13, 2006, an unmarked car "under the control of the defendants, was parked in proximity to the Zitzka family home and its occupants were watching the Zitzka family home and its occupants" (*Id.*, ¶ 38), while "[a]t the same time, Defendant Dale watched the Zitzka and Doe Plaintiffs from a car which he parked in the alleyway behind the Zitzka family residence" (*Id,* ¶ 39). Plaintiffs allege that they were "forced to sell their home and move from Westmont, Illinois" to Indiana on May 31, 2006 (*Id.*, ¶¶ 30, 73) "to protect their dignity and safety" (*Id.*, ¶ 73).

### III.

Defendants move to dismiss two of the four claims pled under federal law, namely Counts II and III. Count II alleges violations of plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Compl., ¶ 95). Count III alleges violations of procedural and substantive due process rights in violation of the Fifth and Fourteenth Amendments to the United States Constitution (*Id.*, ¶ 100).

Multiple claims arising under the federal constitution are to be decided under the most applicable or "explicit" provision. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *United States v. Lanier,* 520 U.S. 259, 272 fn.7 (1997); *Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005). "When a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of

substantive due process must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994).

Defendants argue that Counts II and III must be dismissed as redundant of the First and Fourth Amendment claims in Counts I and IV, respectively (Defs.' Reply at 1, 3).[3] Defendants further argue that Count II, the equal protection claim, should be dismissed for the additional reason that it fails to properly state a "class of one" equal protection claim. We will begin with Count II.

A.

In Count II, plaintiffs allege that they were "victims of a retaliatory and vindictive campaign by government officials to deprive [them] of equal protection under the laws" (Compl., ¶ 88). Specifically, plaintiffs allege that the conduct of defendants which violated their equal protection rights "includes but is not limited to vehement public and private opposition, police surveillance, police invasion of the home, false arrest, false imprisonment, threats of arrest and malicious prosecution" (*Id.*, ¶ 92). Plaintiffs allege that defendants perpetrated this unconstitutional conduct intentionally for the purpose of harassing, intimidating and retaliating against plaintiffs "for their exercise of their constitutionally protected right to freedom of speech" (*Id.*, ¶ 89). They claim that defendants' conduct "is not related to any legitimate state objective, and reflects a concerted effort by Defendants to deprive Plaintiffs of equal protection of the law" (*Id.*, ¶ 91). Plaintiffs also allege that the defendants "have pursued punitive measures against Plaintiffs while not pursuing similar

---

[3]The defendants concede that they did not expressly argue in their opening brief that Counts II and III are redundant of the Fourth Amendment claim in Count IV; but, they say that the argument "was implied by the fact that defendants did not seek to dismiss plaintiffs' Fourth Amendment claims" (Defs.' Reply at 3). We agree, and thus hold that this argument has not been waived by defendants' failure to expressly raise it in the opening brief.

punitive measures against other Village citizens for the same conduct" (*Id.*, ¶ 93). The "same conduct" alleged by plaintiffs is their speech against the defendants.

Defendants seek to dismiss the equal protection claim in Count II on the ground that it is redundant of the First Amendment claim in Count I. Count I alleges that the same acts which plaintiffs assert constitute violations of equal protection also were acts intended to deprive them of the First Amendment right to freedom of speech. Alternatively, to the extent that defendants' alleged conduct against plaintiffs relates to liberty interests outside the First Amendment, defendants argue that this conduct is covered by the Fourth Amendment claim in Count IV. In Count IV, plaintiffs allege that the defendants' actions in arresting and detaining James and Dawn Zitzka (which are also alleged as a basis for the equal protection claim) violated their Fourth Amendment rights. Thus, defendants argue that the equal protection claim in Count II should be dismissed because "the First and Fourth Amendment, with the extensive framework and body of case law dealing with protected speech and unreasonable searches and seizures, provide the more appropriate framework to guide this court and the parties involved in this litigation" (Defs.' Reply at 3). We agree.

In *Graham*, the Supreme Court held that Section 1983 claims are not governed by a single generic standard, but instead must be asserted under a specific constitutional provision identifying a specific constitutional right that is violated. 490 U.S. at 395. The Court also held that the specific constitutional right identified will be tied back to and analyzed under an explicit textual source, rather than to a "more generalized notion of 'substantive due process.'" *Id.* Applying *Graham*, the Court concludes that the First and Fourth Amendments are, indeed, the most explicit textual provisions to address defendants' alleged unconstitutional conduct.

9

In Count II, plaintiffs allege that defendants' conduct "was intended to harass, intimidate and retaliate against Plaintiffs for their exercise of their constitutionally protected right to freedom of speech" (Compl., ¶ 89), and that "Plaintiffs' speech was a substantial motivating factor for Defendants' wrongful conduct" (*Id.* ¶ 90). Thus, while plaintiffs allege in Count II that the alleged unconstitutional conduct constitutes "gross disparate treatment" that is not "pursued . . . against other Village citizens" for exercising their speech rights, and thus has "subjected" them to "a different set of rules, regulations and/or standard of conduct than their fellow citizens" (*Id.*, ¶ 93), the alleged unconstitutional conduct is primarily framed as retaliation for their speech. Likewise, while Count II alleges that part of the activity that violated their equal protection rights involved invasion of the home, false arrest and imprisonment (*Id.*, ¶ 92), the Fourth Amendment claim in Count IV likewise challenges the alleged "capricious seizure, arrest and incarceration" by defendants (*Id.*, ¶ 107). On these allegations, we agree that the First and Fourth Amendment claims in Counts I and IV provide the most explicit and specific framework for addressing plaintiffs' claims.

The case law in the Seventh Circuit confirms this conclusion. In *Conyers v. Abitz*, 416 F.3d 580 (7th Cir. 2005), an inmate alleged that his constitutional rights under the First Amendment had been violated when, having missed a sign up period, he was not permitted to receive late bagged dinners during the Fast of Ramadan. The district court granted summary judgment for defendants on that claim. In so doing, the district court did not address plaintiff's claim that this conduct also constituted cruel and unusual punishment under the Eighth Amendment, and a violation of equal protection under the Fourteenth Amendment. On appeal, the Seventh Circuit reversed the grant of summary judgment on the First Amendment claim, holding that it presented fact disputes that barred summary judgment. The Seventh Circuit also considered, but rejected, plaintiff's contention that

10

the district court erred in failing to consider his Eighth and Fourteenth Amendment claims. "[T]he free-exercise claim arises under the First Amendment and gain[s] nothing by attracting additional constitutional labels." *Id.* at 586 (citing *Graham*, 490 U.S. at 395). *See also Williams v. Snyder*, 150 Fed. Appx. 549 (7th Cir. 2005); *Filinovich v. Claar*, 04 C 7189, 2006 WL 1994580 (N.D. Ill., July 14, 2006) (Fourteenth Amendment's general protection should not be invoked when a more specific textual source is available).

Likewise, in this case, we conclude that the First and Fourth Amendments are the constitutional provisions most directly applicable to plaintiffs' claims. As in *Conyers*, allowing the equal protection claim to proceed would only unnecessarily add constitutional labels. We therefore find Count II to be redundant of Counts I and IV, and we dismiss it with prejudice.[4]

---

[4] In light of this ruling, we need not address defendants' alternative ground for seeking dismissal of Count II: that it fails to adequately state an equal protection claim under a "class of one" theory. In order to prove a class of one equal protection theory, plaintiffs must show that: (1) they were treated differently from others who were similarly situated to them, and (2) that the defendants had no rational basis for this differential treatment, or were motivated by a totally illegitimate animus. *See, e.g., Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005). These are the same elements that are necessary to prove a claim of selective "enforcement," which is the rubric that the plaintiffs use to describe their equal protection claim (Pls.' Mem. at 7); *see McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

Were it necessary to reach the issue, we would find it difficult to hold that plaintiffs' allegations are sufficient to state a claim for equal protection, because the complaint contains inconsistent and mutually exclusive assertions. Plaintiffs assert both that "Westmont has a custom and policy of retaliating against persons who would exercise speech either in manner critical of the Village and Police Department or which Defendants perceive to be in opposition to the political leadership of the Village" (Compl., ¶ 60), and that defendants "have pursued punitive measures against Plaintiffs while not pursuing similar punitive measures against other Village citizens for the same conduct," thereby subjecting plaintiffs "to a different set of rules, regulations and /or standard of conduct than their fellow citizens" (*Id.*, ¶ 93). In short, the complaint alleges that the Village both discriminates against everybody who engages in speech that it dislikes, and discriminates against no one who engages in disagreeable speech other than plaintiffs. It is difficult to see how those kinds of allegations can "nudge [] . . . claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974.

## B.

In Count III, plaintiffs claim a violation of their due process rights under the Fourteenth Amendment, alleging that "Defendants' conduct toward Plaintiffs was arbitrary, capricious and violated Plaintiffs' due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution," and that "Plaintiffs were not afforded their right to procedural or substantive due process by defendants" (Compl., ¶¶ 100-101). As we have explained, "[w]hen a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright,* 510 U.S. at 273.

Plaintiffs' due process claim incorporates the factual allegations of the complaint (Compl., ¶ 97), which make plain that plaintiffs allege that the defendants engaged in the challenged conduct in order to retaliate against Dawn and James Zitzka for their speech (*see, e.g.,* Compl., ¶¶ 6-10, 69). For the reasons set forth above, we conclude that the First Amendment provides the more explicit textual source of constitutional protection than does the due process clause, and that the due process claim therefore adds only a constitutional label and not substance to the complaint.

Plaintiffs argue that the due process claims "are entirely separate and independent claims that are not supplanted, . . . by the First Amendment free-speech claim" (Pls.' Mem. at 1, 3). They contend that "it is plaintiffs' fundamental interest in their personal liberty that is brought most into question by the capricious arrests, incarcerations and groundless criminal prosecutions" (*Id.* at 3). Moreover, plaintiffs contend that "it is the due process and equal protection claims which go to the heart of the abuse of the criminal justice systems which defendants used to arrest, incarcerate and prosecute the plaintiffs (*Id.*).

We disagree. The core of plaintiff's constitutional claim is that the defendants punished plaintiffs for engaging in protected speech, in derogation of their First Amendment rights. While the methods and/or means the defendants allegedly chose to effect that punishment – alleged abuses of the criminal justice system – may implicate due process, that fact does not shift the focus of the case away from the end result sought by those methods or means: the alleged retaliation against protected speech. That focus of the case grounds plaintiffs' claims squarely in the First Amendment, and makes that constitutional provision the most directly applicable textual source for the claims that plaintiffs assert.

That said, we also conclude that, to the extent abuses of the criminal justice system are alleged, plaintiffs' Fourth Amendment claim in Count IV – which defendants do not seek to dismiss – is more directly applicable to those claims than is the due process clause. The Supreme Court has stated that "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases . . . ." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975).

Here, plaintiffs assert that they were subject to false arrests and imprisonment, as well as police invasion of the home. The Fourth Amendment's requirements of probable cause for an arrest and its prohibition of unreasonable searches and seizures provide direct safeguards for the liberty interests asserted by plaintiffs without the assertion of a separate due process claim. The Fourteenth Amendment protects a more general property right to due process; the Fourth Amendment is more targeted to persons, houses and effects. *See, e.g., Soldal v. Cook County, IL.*, 506 U.S. 56, 70-71 (1992) (although finding that "[c]ertain wrongs affect more than a single right and, accordingly, can

13

implicate more than one of the Constitution's commands where multiple claims target the same type of government behavior," *Graham* counsels that a court use the constitutional text with more explicit protection).

Finally, we note that plaintiffs' prayers for relief further underscore the duplicative nature of their due process (and equal protection claims). In Counts II (equal protection) and III (due process), plaintiffs ask for exactly the same relief as in Counts I and IV: including "injunctive relief ordering that Defendants be enjoined from further retaliatory conduct." Thus, the relief plaintiffs can achieve under Counts II or III is fully available if they prevail on Counts I or IV; and, we fail to see how plaintiffs could ever prevail on Counts II or III if they fail to prevail on Counts I or IV.

Thus, we find that plaintiffs' due process claims add nothing of substance to their claims under the First and Fourth Amendment. We therefore hold that Count III is redundant and should be dismissed.

### IV.

Defendants also seek to dismiss each of the state law claims alleged in Counts V through IX as barred by the applicable statutes of limitations under the one-year statute of limitations supplied by Illinois Local Governmental and Governmental Employee Tort Immunity Act ("ITIA"), 745 ILCS § 10/8-101(a), for claims against a local entity or its employees.

Although the individual police officer defendants have been sued in their official as well as their individual capacities, the ITIA's one-year statute of limitations applies to claims against officers in both their individual and official capacities. *See Delgadillo v. Paulnitsky*, No. 05 C 3448, 2007 WL 1655252, at * 5 (June 1, 2007) ("Illinois courts have made clear that the Tort Immunity Act's one-year statute of limitations applies even where an employee is sued in his individual capacity")

(citing *Sperandeo v. Zavitz*, 365 Ill.App.3d 691, 850 N.E.2d 394 (Ill.App.2d Dist. 2006) (rejecting plaintiff's claim that two-year personal injury statute of limitations applied, and finding instead that 745 ILCS § 8-101's one year statute of limitations applies to lawsuits against municipalities and their employees, even when the employee is sued in his individual capacity). There is no dispute that the ITIA applies to all of plaintiffs' state law claims.

At the threshold, there also is no dispute that Counts V (false light invasion of privacy) and VI (defamation) must be dismissed. Plaintiffs' concede this point (Pls.' Mem. at 8), as they must, because all the actions alleged to constitute violations "accrued outside of the statutory period provided for in the Illinois Tort Immunity Act" (*Id.*). Thus, we grant defendants' motion to dismiss Counts V and VI.

The plaintiffs do not concede that Counts VII through IX are time-barred. Instead, they argue that the intentional infliction of emotional distress ("IIED") (Count VII), false arrest and imprisonment (Count VIII), and malicious prosecution (Count IX) claims "were filed within the statutory period" (Pls.' Mem. at 8-9). We address each claim separately, to examine whether that claim is timely within ITIA's one-year statute of limitations.

### A.

Under Illinois law, a plaintiff asserting an IIED claim must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. S.Ct. 2003).

15

In Count VII, plaintiffs assert an IIED claim based generally upon the conduct alleged in paragraphs 1-76 of the complaint (Compl., ¶ 132). Plaintiffs do not specify the precise acts that they say were "extreme and outrageous," but apparently rely on the entire course of conduct by defendants. In our review of the complaint, we find numerous incidents of alleged misconduct spanning the period March 10, 2005 through May 1, 2006 (*see* Compl., ¶¶ 32-55). Three of those incidents allegedly occurred after February 20, 2006 – and thus within one year before the filing of the original complaint on February 20, 2007. *First*, plaintiffs allege that on May 3, 2006, one individual officer drove by the Zitzka home slowly and glared (*Id.*, ¶ 41). *Second*, plaintiffs allege that on May 13, 2006, an unmarked police car within the defendants' control parked in "proximity "to front of the Zitzka home, while one officer parked in his car in the alley to the rear of the home (*Id.*, ¶ 38). *Third*, the plaintiffs allege that they moved from Westmont because of all alleged incidents that had occurred as of May 31, 2006 (*Id.*, ¶ 30).

These last three allegations, by themselves, would not support an IIED claim. However, in Illinois, the tort of intentional infliction of emotional distress is considered a "continuing tort" which accrues for purposes of the statute of limitations "at the time the last injurious act occurs or the conduct is abated." *Feltmeier*, 798 N.E.2d at 89 (Ill. 2003). "The doctrine of continuing violation as the Illinois Supreme Court has held, 'does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant's conduct as a continuous whole for prescriptive purposes.'" *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006) (quoting *Feltmeier*, 798 N.E.2d at 79). Thus, "the statute of limitations is only held in abeyance until the date of the last injury suffered or when the tortious acts cease." *Evans*, 434 F.3d at 934 (quoting *Feltmeier*, 798 N.E.2d at 89).

16

Under this authority, the one-year statute of limitations period commenced no earlier than May 13, 2006, when the plaintiffs allege that they were watched from police cars (marked and unmarked), because that act occurred in the backdrop of an alleged ongoing course of home invasion, harassing and humiliating surveillance of their home and persons, false arrests, intimidation and malicious prosecution. The original complaint was filed on February 20, 2007. Thus, the Court finds that the IIED claim is timely under the ITIA's one-year statute of limitations.

## B.

The same cannot be said for Count VIII, alleging false arrest and imprisonment against James and Dawn Zitzka. Applying the ITIA to these claims, we find that the one-year statute of limitations bars that claim.

In Count VIII, a cause of action for false arrest and imprisonment claim accrued – and thus triggered the statute of limitations – at the time of the plaintiffs' arrests. *See Delgadillo v. Paulnitsky,* 05 C 3448, 2007 WL 1655252 (N.D. Ill. 2007) (citing *Wallace v. City of Chicago,* 440 F.3d 421, 425 (7th Cir. 2006), *aff'd* 127 S.Ct. 1091 (2007)). Here, plaintiffs' arrests occurred on June 15, 2005 (arrest of Dawn Zitzka), June 16, 2005 (arrest of Dawn Zitzka), and June 18, 2005 (arrests of both James and Dawn Zitzka) (Compl., ¶¶ 49, 52-54). Plaintiffs' own allegations establish that those arrests occurred more than one year prior to the filing of the February 20, 2007 complaint. Accordingly, this is a situation where plaintiffs effectively have plead themselves out of court by alleging facts that show their claim is time-barred. *Hollander,* 457 F.3d at 691 n.1. Thus, we grant defendants' motion to dismiss in Count VIII.

C.

The malicious prosecution claim alleged in Count IX is not time-barred by the ITIA. In Illinois, "[a] cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor." *Ferguson v. City of Chicago*, 820 N.E.2d 455 (Ill. 2004). The complaint alleges that as of June 15, 2007 (when the amended complaint was filed), three of the six criminal prosecutions initiated against James and/or Dawn Zitzka had been terminated in their favor, and three remained pending (Compl., ¶ 59). Plaintiffs did not allege when those three prosecutions were terminated in their favor.

In their response to the motion, plaintiffs assert that the three prosecutions were terminated after February 20, 2006, and two others were recently terminated in their favor on July 23, 2007 (Pls.' Mem. at 9). A brief in response to a motion to dismiss is not the appropriate vehicle to amend a compliant. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *see also Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (applying rule to brief in response to summary judgment motion). But, the Zitzka's failure to allege in the complaint the dates the prosecutions terminated in their favor is not fatal to their malicious prosecution claim. Those dates are relevant not to plaintiffs' claim, but rather to defendants' affirmative defense of the statute of limitations. And, "complaints need not allege facts that tend to defeat affirmative defenses." *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 628 (7th Cir. 2003); *see also Hollander*, 457 F.3d at 691 n.1 ("a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations"). Thus, we deny defendants' motion to dismiss the malicious prosecution claim as barred by the ITIA.

## CONCLUSION

IT IS THEREFORE ORDERED that the Clerk of the Court grants defendants' motion to dismiss (doc. # 32) Counts II, III, Counts V, VI, VIII with prejudice. The Court denies defendants' motion to dismiss as to Counts VII and IX.[5]

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: November 6, 2007

---

[5]Although plaintiffs requested an opportunity to amend the complaint with respect to Counts V and VI (which plaintiffs conceded as time barred under the ITIA) (Pls.' Mem. at 8), they did not provide any argument for why another amendment should be allowed given the statutory bar. We therefore deny this request.

19