## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DAWN M. ZITZKA and JAMES ZITZKA )
individually and on behalf of JANE DOE 1 )
and JANE DOE 2, their minor daughters, and )
JOHN DOE, their minor son, )
                                      )     No. 07 C 0949
                Plaintiffs, )    Magistrate Judge Schenkier
                                      )
vs. )
                                        )
THE VILLAGE OF WESTMONT, a municipal )
corporation; POLICE OFFICERS JAMES )
SCHLICHER, MICHAEL DALE, DAVID )
NEWTON, GREGORY COMPTON, TERRENCE )
BOYER and JOHN BRIGHT, )
                                        )
                        Defendants. )

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

Plaintiffs filed this lawsuit against the Village of Westmont and six Westmont police officers

(collectively "Defendants") in their individual and official capacities. After this Court's ruling on

motions to dismiss, *Zitzka v. Village of Westmont*, No. 07 C 0949, 2007 WL 3334336 (N.D. Ill.

Nov. 6, 2007) and summary judgment, *Zitzka v. Village of Westmont*, 743 F.Supp.2d 887 (2010),

Dawn Zitzka ("Ms. Zitzka") is the only plaintiff remaining in the case. Her claims against

defendants include federal claims under 42 U.S.C. § 1983, and a state malicious prosecution claim.

The matter is set for a jury trial to begin on November 7, 2011.

The parties collectively have filed 54 Motions *in Limine* (*see* doc. # 165, Ex. E). Most of

these motions have been decided or deferred (*see* doc. # 168 (08/31/11 order)). The Court has

---

[1]On August 30, 2007, by consent of the parties and pursuant to 28 U.S.C. § 636(6), the case was reassigned to
this Court for all proceedings, including the entry of final judgment (doc. # 42-43).

permitted briefing on 14 of the motions (*Id.*). We now have received those briefs (doc. ## 169-170, 172, 174). Our rulings on these motions *in limine* are set forth below.

## I.

The Court permitted briefing on eight of plaintiff's motions *in limine*: Nos. 3, 6-8 and 19-22. Plaintiff states that the parties have stipulated to Motion *in Limine* No. 20, which sought to bar evidence or argument as to the character of witnesses related to untruthfulness (Pl.'s Mem. at 8). We therefore grant that motion. In addition, plaintiff offered no argument on Motion *in Limine* No. 21, which sought to bar defendants' experts from testifying as to opinions not expressly set forth in their expert reports. We cannot envision the basis for defendants to do so, and they have not disclosed any in the briefing. We therefore grant this motion *in limine* as well.

With that, we address below the remaining motions *in limine* filed by plaintiffs.

## A.

**Plaintiff's Motion *In Limine* No. 3.** Plaintiff broadly seeks to bar any evidence or reference to arrests or convictions of plaintiff, her family members, or her witnesses. However, the convictions that the parties address in their briefing are those of plaintiff, and no one else. Defendants seek to use evidence of three misdemeanor convictions of plaintiff at trial: (1) a 1986 conviction for retail theft, for which plaintiff received a fine of $90.00 and six months of court supervision; (2) a 1986 conviction for possession of cannabis, for which plaintiff received a fine of $100.00 and court costs along with six months of probation; and (3) a 1995 conviction for a retail theft, for which plaintiff was sentenced to pay $50.00, perform 40 hours of public service and was under court supervision for one year (Defs.' Joint Br. at 1 (citing DXs 59-61).

Defendants do not seek to offer these convictions to attack plaintiff's character for truthfulness under Fed. R. Evid. 609, and do not seek to use these convictions as other crimes evidence under Fed. R. Evid. 404(b). Rather, the sole basis for defendants' argument that these convictions are admissible is "for the limited purpose of undermining plaintiff's damages" (Defs.' Joint Br. at 1). Defendants argue that, because the plaintiff seeks to pin all of her "emotional distress and suffering on the defendants," defendants are entitled to offer evidence of these convictions to show "how much distress the plaintiff suffered as a result of her arrest by the defendants" and how much, instead, stemmed from these prior convictions (*Id.* at 2). We disagree.

In this case, plaintiff alleges that she was subject to harassment by defendants for a period of several months, culminating in being arrested on four different charges between June 15 and 18, 2005. All of these charges resulted either in findings of not guilty (in the case of the defacement and disorderly conduct charges), or were dropped by the state without trial (in the case of the telephone harassment and trespass charges). By contrast, the three misdemeanor convictions which defendants seek to offer into evidence involved misdemeanors that occurred between 10 and 19 years prior to the dates of the arrests at issue in this case, and resulted in convictions rather than acquittals or dismissal of charges. None of them involved any alleged false arrests or retaliation.

Under these circumstances, we find these convictions irrelevant to plaintiff's damages claims. Defendants have failed to explain how convictions for misdemeanor offenses which plaintiff acknowledged committing long ago would contribute to the emotional distress that she claims to have suffered from being falsely charged with criminal offenses or from experiencing retaliation for asserting her first amendment rights. *See Blackwell v. Kalinowski*, No. 08 C 7257, 2011 WL 1557542, at *4 (N.D. Ill. Apr. 25, 2011) ("to be relevant, the arrests must be substantially similar")

3

*see also Brandon v. Village of Maywood*, 179 F. Supp.2d 847, 855 (N.D. Ill. 2001). Nor do defendants offer any evidence that plaintiff was suffering from lingering emotional effects from these old convictions for misdemeanor offenses in 2005, some one to two decades after they occurred.[2]

Moreover, we find that even if these convictions were relevant, they should be excluded under Fed. R. Evid. 403, because any marginal relevance they may possess "is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." Even with a limiting instruction, evidence that the plaintiff has been convicted three times in the past for criminal offenses (even if minor ones) could unfairly color the jury's perception of her overall credibility. That is particularly so given that one of the convictions is for a drug offense, and the other two are for shoplifting – which a jury could view as reflecting dishonesty that may influence its assessment of plaintiff's testimony.

We have considered the authorities that defendants offer in support of their position that these prior convictions should be admissible at trial. We find that neither of the cases upon which defendants rely is persuasive.

In *Gribben v. City of Summit*, No. 08 C 0123, 2010 WL 2928094, at *3 (N.D. Ill. July 20, 2010), the court held that evidence of plaintiff's prior arrests and convictions was relevant to damages. However, the plaintiff in that case had been arrested no fewer than 19 times, and his rap sheet included a drug conviction. *Id.* The volume of Mr. Gribben's prior convictions and arrests

---

[2]Defendants cite to the testimony of plaintiff's expert that whether plaintiff had been arrested in the past might be important for the expert to know in opining about plaintiff's emotional distress from the events at issue in this case (Defs.' Joint Br. at 4-5). In that testimony, Dr. Catherall testified that his opinion might be changed "depend[ing] on what the records were" (*Id.* at 5). Defendants do not cite to any passage of the deposition in which they reveal to Dr. Catherall that plaintiff had these three prior convictions (or the arrests that led to them), the nature of the convictions, or how far in the past they had occurred. Thus, we find that Dr. Catherall's agreement with the general proposition that prior arrests "might be" important fails to establish that these convictions are relevant

4

was central to the Court's analysis: "if presented with evidence that Mr. Gribben had been arrested and incarcerated numerous times in the past, the jury could conclude that Mr. Gribben would not have been as emotionally traumatized by the arrest on January 6, 2007 as he claims to have been." 2010 WL 2928094, at *4. By contrast, the small number of minor convictions of plaintiff in this case, as well as how far in the past they occurred, robs prior conviction evidence of any relevance in this case.

In *Redmond v. City of Chicago*, No. 06 C 3611, 2008 WL 539164, at *1 (N.D. Ill. Feb. 26, 2008), the court allowed the defense to offer evidence of prior – and subsequent – arrests. In that case, neither the opinion nor the briefing on the motion *in limine* discloses the number of prior arrests or convictions, or their nature. To the extent that, as in *Gribben*, there were a large number of prior arrests, we find *Redmond* distinguishable for the reasons described above. To the extent that *Redmond* stands for the proposition that a plaintiff's prior arrest or conviction record is relevant any time the plaintiff in a subsequent case seeks compensatory damages for alleged police misconduct, we do not find that proposition persuasive and thus respectfully decline to adopt it.

Accordingly, for the foregoing reasons, the Court grants plaintiff's Motion *in Limine* No. 3, and will bar any evidence or reference to any arrests or convictions of plaintiff, members of her family or her witnesses.[3]

---

[3]Defendants state that plaintiff also was arrested in May 2010 for shoplifting, but that plaintiff has refused defendants' request for detailed information regarding that arrest (Defs.' Joint Br. at 1 and n.2). For many of the reasons stated above (and given that we do not know whether this arrest resulted in a conviction), we exclude evidence of this arrest as well.

**B.**

**Plaintiff's Motions *in Limine* Nos. 6, 7 and 8.**  Since these motions all address variations on the same theme, we consider them together.  Plaintiff asks the Court to exclude any evidence or reference to: Jane Doe 1's, Dawn Zitzka's, or James Zitzka's sexual conduct, with the exception of the alleged rape of Jane Doe 1 (Plaintiff's Motion *in Limine* No. 6); any alleged marital infidelity by Dawn Zitzka or James Zitzka (Plaintiff's Motion *in Limine* No. 7);  and any rape, sexual assault, or molestation of Dawn Zitzka (Plaintiff's Motion *in Limine* No. 8).  Plaintiff argues that this evidence is irrelevant, or if it has any relevance, should nonetheless be excluded pursuant to Fed. R. Evid. 403.

In their brief, defendants state that they do not intend to offer evidence of James Zitzka's alleged sexual conduct (Defs.' Joint Br. 12).  Therefore, we grant plaintiff's Motion *in Limine* Nos. 6 and 7 to the extent that those motions seek to bar that evidence.

In addition, defendants concede that any evidence concerning Jane Doe 1's sexual conduct (other than with respect to the alleged rape that plaintiff asked the Westmont Police to investigate), could only be relevant if there is evidence that plaintiff "likely suffered from increased emotional distress as a result of it" (Defs.' Joint Br. 11-12).  At this time, defendants point to no evidence creating that link.  Accordingly, we grant plaintiff's Motion *in Limine* No. 6 to the extent it seeks to bar evidence of Jane Doe 1's sexual conduct.

There remains in dispute three areas of evidence that defendants seek to offer:  Dawn Zitzka's sexual conduct (which is the subject of plaintiff's Motion *in Limine* No. 6), evidence concerning alleged marital infidelity by plaintiff (which is the subject of plaintiff's Motion *in Limine* No. 7), and evidence concerning any rape, sexual assault or molestation of plaintiff (which is the subject of Motion *in Limine* No. 8).

6

With respect to plaintiff's alleged sexual conduct and abuse as a child, defendants argue that this evidence is relevant to show that plaintiff was already suffering from panic attacks, panic disorder and anxiety prior to the events at issue in this case, and was receiving treatment and medication from mental health professionals to cope with those conditions. Defendants argue that evidence of plaintiff's "history of abuse is exceedingly relevant to the extent it was contributing to her condition of panic disorder, anxiety and post-traumatic stress disorder" (Defs.' Joint Br. at 11). For her part, plaintiff argues that this kind of evidence is irrelevant because at most it would show that defendants were presented with an "egg shell" plaintiff, but that is not a defense to damages (Pl.'s Mem. at 6).

To be sure, "the tortfeasor takes his victim as he finds him (in this case, her), so if the victim has a pre-existing condition which the tort aggravates, the tortfeasor is liable for the full consequences." *Pieczynski v. Duffy*, 875 F.2d 1331, 1336 (7th Cir. 1989) (holding that compensatory damages awarded in a Section 1983 harassment case were not excessive, even though plaintiff's injuries included the aggravation of several pre-existing medical conditions). That said, we disagree with the proposition that plaintiff's pre-existing mental health treatment (which was ongoing from at least 18 months prior to the events in question right up to the commencement of the events leading to this lawsuit) is irrelevant to plaintiff's claim for compensatory damages.

If plaintiff had no history of mental health conditions or treatment, a jury fairly could infer that the events at issue are what caused plaintiff to suffer from mental health conditions that required treatment and that caused her emotional distress. Conversely, the fact that – prior to the events in question – plaintiff already was receiving mental health treatment for conditions similar to those that she now attributes to the conduct of the defendants is relevant evidence that the jury may consider

on the question of whether, if liability is found, defendants' conduct is a proximate cause of the emotional distress that plaintiff claims. What's more, even if that conduct were a proximate cause of that emotional distress, a jury is entitled to consider evidence regarding the extent to which that distress may stem from other causes as well. *See, e.g., Palmquist v. Selvik*, 111 F.3d 1332, 1342 (7th Cir. 1997) (in a Section 1983 case brought by the estate of a man shot and killed by police, the court observed – in *dicta* – that evidence the deceased "wanted to die certainly affected how long he would be expected to live, and thus what amount of money to award his mother and his estate"); *Cella v. United States*, 825 F. Supp. 1383, 1404 (N.D. Ind. 1991) (held that where a "defendant's acts merely advanced a disability that would have occurred anyway, the vessel owner is only liable for such advancement of the disability caused by it"). Thus, plaintiff's mental health and treatment during the time period set forth in defendants' brief (May 2004 and later) is relevant.

However, where we part company from the defendants is with respect to their contention that the details of what contributed to that prior mental health treatment are fair game at trial. The defendants have offered no argument about why the jury must hear details about decades-old instances of abuse and trauma in order to argue that, as shown by the mental health treatment that was ongoing at the time the events in this case occurred, the emotional distress plaintiff claims may stem from sources other than the defendants' conduct. We therefore grant plaintiff's Motions *in Limine* Nos. 6 and 8, to the extent they seek to bar evidence concerning plaintiff's sexual conduct or any rape, sexual assault or molestations she has suffered.

Finally, we turn to the portion of Motion *in Limine* No. 7 that seeks to bar evidence of marital infidelity by plaintiff. Based on the briefing, the target of this motion evidence is evidence of plaintiff's relationship with an individual referred to by plaintiff's therapist as the "phone man"

(Defs.' Joint Br., Mardis Dep. at 102-03). Plaintiff argues that this evidence is irrelevant and, in any event, should be barred as under Rule 403 because any arguable relevance would be substantially outweighed by the unfair prejudice that would result from the jury inferring (incorrectly) from this evidence that plaintiff had an extra-marital affair with this person (Pl.'s Mem. at 7).

Defendants argue that the fact of this relationship is relevant because it is "directly related to plaintiff's claim for emotional damages" (Defs.' Joint Br. at 12). Defendants cite to the deposition testimony of plaintiff's therapist concerning the detrimental affect this phone relationship had on plaintiff's relationship with her husband, and the increased stress and anxiety that she suffered as a result. Moreover, defendant points to plaintiff's assertion that her relationship with the "phone man," and the negative affect it has had on her, was the result of defendants' conduct (Defs.' Joint Br. at 12).

Based on the submissions of the parties, the Court concludes that evidence of this telephone relationship is relevant to plaintiff's claim for compensatory damages. It is relevant both because there is evidence that this relationship is a source of plaintiff's anxiety and stress, and because plaintiff blames the relationship on the stress inflicted upon her by defendants' conduct.

We are sensitive to plaintiff's concern that defendants seek to offer this evidence in order to insinuate that she not only had a telephone relationship with this individual, but also engaged in an extra-marital sexual relationship with him (Pl.'s Mem. at 5). Defendants have cited no evidence that would support the proposition that plaintiff had such an extra-marital affair with this individual. Thus, in the absence of such evidence, we will bar defendants from arguing to the jury that plaintiff and the "phone man" engaged in an extra-marital affair. With this limitation, and given the role that plaintiff says the defendants played in driving her to a relationship with the "phone man" and the

9

resulting damage she claims from it, we conclude that the risk of unfair prejudice does not substantially outweigh the probative value of this evidence. We therefore deny Motion *in Limine* No. 7 to the extent that this motion seeks to bar evidence of the relationship with the "phone man."

C.

**Plaintiff's Motion** *In Limine* **No. 19.** In its summary judgment opinion, the Court held that there was probable cause for the arrest of plaintiff's husband for battery, as well as for plaintiff's arrest for defacement of property. *Zitzka v. Vill. of Westmont*, 743 F. Supp.2d at 907. In Motion *in Limine* No. 19, plaintiff seeks to bar evidence of this holding on summary judgment. Plaintiff argues that this evidence is irrelevant, and that even if it is marginally relevant, it should be excluded under Fed. R. Evid. 403 (Pl.'s Mem. at 7-8).

Defendants argue that they should be allowed to offer evidence that this Court found probable cause for plaintiff's arrest for criminal defacement of property, since we held that the existence of probable cause for that charge is not a bar to plaintiff's claim for retaliatory arrest (although it does bar her claim for retaliatory prosecution). *See Zitzka*, 743 F. Supp.2d at 912. We agree. As the Court stated in its earlier opinion, the presence of probable cause, even if not a bar to a retaliatory arrest claim, nonetheless has "powerful evidentiary significance." *Id.* at 920 (quoting *Hartman v. Moore*, 547 U.S. 250, 262 (2006)). We therefore deny this motion *in limine* insofar as it seeks to bar evidence that there was probable cause for plaintiff's arrest for criminal defacement.

However, defendants do not stop there. In their response to the motion *in limine*, defendants argue that plaintiff's retaliatory arrest claim based on her arrest for criminal defacement should be dismissed because the Court erred on summary judgment in holding that probable cause is not an absolute bar to a retaliatory arrest claim (Defs.' Joint Resp. at 13-15). We reject this *sub silentio*

request to reconsider a summary judgment ruling we issued more than one year ago. What's more, contrary to defendants' selective citations, the authority is far from uniform on this question. The circuits are split on whether probable cause is an absolute bar to a claim for retaliatory arrest: the Sixth and Eighth Circuits have imposed such a bar, *see, e.g., McCabe v. Parker*, 608 F.3d 1068, 1079 (8th Cir. 2010) and *Williams v. City of Carl Junction, Mo.*, 480 F.3d 871, 876 (8th Cir. 2007), while the Tenth Circuit (in an opinion not cited by defendants) has refused to hold that probable cause invariably bars a retaliatory arrest claim. *See Howards v. McLaughlin*, 634 F.3d 1131, 1145-49 (10th Cir. 2011).[4] Likewise, while the Seventh Circuit has not reached this question, district courts within this Circuit have reached differing results. *Compare, e.g., Trepanier v. City Of Blue Island*, 03 C 7433, 2008 WL 4442623, at *7-8 (N.D. Ill. Sept. 29, 2008) (holding that probable cause bars a retaliatory arrest claim) and *Gullick v. Ott*, 517 F. Supp. 2d 1063, 1069-72 (W.D. Wis. 2007) (holding that probable cause does not automatically bar a retaliatory arrest claim).

All of these decisions turn on the various courts' readings of *Hartman v. Moore*, 547 U.S. 250 (2006), which held that probable cause is an insuperable bar to a retaliatory *prosecution* claim, but did not expressly address the effect of probable cause on a retaliatory *arrest* claim. We remain of the view that the approach this Court took on summary judgment is faithful to the rationale, and to the limitations, in *Hartman*. Critical to the Supreme Court's holding that the existence of probable cause bars a retaliatory prosecution claim is that proof of animus on the part of the arresting officer does not necessarily show that this animus "induced the action of a prosecutor who would

---

[4] While defendants cite an unpublished opinion to show that the Ninth Circuit holds that probable cause bars a retaliatory arrest claim, *Woods v. City of Garden Grove*, 395 F. Appx. 467, 469 (9th Cir. 2010), published decisions from the Ninth Circuit have held to the contrary. *See Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008); *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006).

not have pressed charges anyway." *Hartman*, 547 U.S. at 263. As a result, the Supreme Court held that the absence of probable cause was necessary to "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity." *Id.* We agree with the analysis of the court in *Gullick* that these concerns are not implicated in a retaliatory arrest case, where there is no prosecutor involved and when the conduct of the defendant officer(s) is alleged to be directly responsible for the injuries. *Gullick*, 517 F. Supp. 2d at 1071. Thus, we deny defendants' request to remove from trial the retaliatory arrest claim based on the criminal defacement arrest.

In their motion to this motion *in limine*, defendants also seek to preserve the ability to offer evidence with respect to "any other arrests [for which] this Court found that probable cause existed" (Defs.' Joint Br. at 15). Defendants have not pointed to any other arrests of the plaintiff for which the Court found probable cause, and for good reason: there are none. With respect to plaintiff's arrests for telephone harassment, trespass and disorderly conduct, the Court found that there was a genuine issue of material fact as to whether probable cause existed for those arrests. *Zitzka*, 743 F. Supp. 2d at 910 (the arrest for telephone harassment), 913 (trespass), and 914 (disorderly conduct). It is those specific arrests for which the Court has required a jury trial on plaintiff's Fourth Amendment claim for false arrest, and on her claims for retaliatory prosecution and arrests in violation of the First Amendment. There being no other arrests of plaintiff for which the Court found probable cause, we reject this request by defendants to offer evidence that does not exist.

Finally, defendants seek to preserve – apparently as a protective measure – the right to offer evidence that the Court found probable cause for the arrest of Mr. Zitzka for battery. Defendants say that plaintiff seeks to introduce evidence of that arrest in an effort to establish her claim of First

Amendment retaliation. Defendants ask that if plaintiff is allowed to do so, then they be allowed to offer evidence that there was probable cause for that arrest (Defs.' Joint Br. at 13). For the reasons we explain below in granting defendants' Motion *in Limine* No. 3, we will not allow plaintiff to offer evidence of Mr. Zitzka's arrest for battery in aid of her First Amendment retaliation claim. As a result, there is no basis for the defense to offer evidence that there was probable cause for that arrest. On this ground, we grant plaintiff's Motion *in Limine* No. 19 insofar as it seeks to bar evidence that there was probable cause for Mr. Zitzka's battery arrest.

**D.**

**Plaintiff's Motion *in Limine* No. 22**. Plaintiff seeks to bar expert or opinion testimony of any "undisclosed parties" (including any current or former employees of the Village of Westmont Police Department for DuPage County State's Attorney's Office) concerning probable cause or proper policing techniques. The parties agree on the proposition that no witness (whether disclosed or undisclosed, and whoever his or her employer may be) should be allowed to testify that "there was or was not probable cause" (see Pl.'s Mem. at 10 and Defs.' Joint Br. at 15).

Where the parties appear to part company is on the question of what the defendant officers may testify to with respect to the probable cause inquiry. Defendants disavow any express intent to have the defendant officers opine as to probable cause or police procedures. But, the defendants argue that the defendant officers should be allowed to testify as to what factual circumstances they say gave them a proper basis to arrest plaintiff (*i.e.*, constituted probable cause).

To the extent that plaintiff seeks to bar defendant officers from offering this kind of testimony, the motion *in limine* is denied. Defendant officers certainly have specialized knowledge by virtue of their training and experience as police officers. But, they also are occurrence witnesses:

they are the individuals who determined whether to arrest plaintiff. Their status as police officers does not allow them to opine as to what constitutes probable cause; but, at the same time, it does not disable them from explaining their actions which plaintiff challenges in this case, and for which plaintiff seeks substantial damages. Thus, defendants may testify as to the factual circumstances that led them to arrest plaintiff, without linking it to an opinion about probable cause. The jury will determine, based on all of the evidence, what the factual circumstances were and whether those standards met the legal standard of probable cause.

The recent decision in *Aponte v. City of Chicago*, 09 C 8082, 2011 WL 1838773 (N.D. Ill. May 12, 2011) is not to the contrary. In that case, the trial court barred a retained expert from offering an opinion as to whether certain factual circumstances constituted probable cause. That ruling does not shed light on whether officers who are the defendants in a case should be barred from offering their explanation of the factual circumstances that led them to make the arrests. To extend *Aponte* to this very different situation would unfairly bar the defendant officers from telling their side of the story.

Accordingly, we grant in part and deny in part plaintiff's Motion *in Limine* No. 22. We deny the motion to the extent that we decline to bar the defendant officers from testifying as to the factual circumstances that led them to arrest plaintiff; we grant the motion insofar as it seeks to bar defendants – or any other witnesses – from offering an opinion that any particular set of factual circumstances constitutes probable cause, or on what constitutes proper policing techniques.

## II.

The Court permitted briefing on six of defendants' motions *in limine*: Nos. 1, 3, 5, 6, 10 and the portion of Motion *in Limine* No.12 that sought to bar Andrew Scott from testifying regarding

probable cause. On that latter point, the parties have stipulated that "opinion testimony that there was probable cause (or was not probable cause) is properly a question for the jury to decide. The parties stipulated Andrew Scott will not proffer testimony that there was or was not probable cause of the issuance of the arrest warrants and that Defendants will not introduce testimony 'from other police officers or State's Attorneys as well that there was probable cause for the issuance of the arrest warrants.' However, Mr. Scott may testify as to what is proper police procedure for determining whether probable cause exists to the extent disclosed in his expert report or testimony" (Pl.'s Resp. at 8).

Based on that stipulation, we grant the defendants' Motion *in Limine* No. 12 to the extent it seeks to bar Mr. Scott from offering opinion testimony on the question of probable cause. Our rulings on the remaining defense motions *in limine* are set forth below.

### A.

**Defendants' Motion *in Limine* No. 1.** This motion is titled as one to "preclude any evidence regarding obtaining the complaint or arrest warrant on the charge of disorderly conduct" (Final Pretrial Order, Ex. E). However, defendants offer no argument whatsoever to support such a broad request. Nor could they reasonably do so in light of the Court's summary judgment holding that a triable issue exists on plaintiff's claims for false arrest and First Amendment claims in connection with her arrest and prosecution for the disorderly conduct.

Rather, the true agenda underlying this motion *in limine* is an attempt to extricate Officer Newton from the claims concerning disorderly conduct. The sole argument defendants offer in support of this motion is that Officer Newton had insufficient involvement in or knowledge of the circumstances underlying the obtaining of an arrest warrant at the time of plaintiff's arrest for

15

disorderly conduct, and that the Court erred in failing to grant Officer Newton summary judgment (Defs.' Joint Br. at 1-3). Once again, we will not disturb a year-old summary judgment ruling in response to a motion for reconsideration disguised as a motion *in limine*.

Moreover, even had a request for reconsideration been timely filed, we would not grant it. Based on plaintiff's response to the motion *in limine* (Pl.'s Resp. at 1-2), there appears to be a fact dispute about Officer Newton's knowledge and involvement. To the extent that the evidence offered at trial does not support the claim against Officer Newton, the Court can address that matter in response to a timely and properly filed motion for judgment as a matter of law at the conclusion of plaintiff's case in chief. This motion *in limine* is denied.

### B.

**Defendants' Motions** *in Limine* **Nos. 3 and 6.** In Motion *in Limine* No. 3, defendants seek to bar plaintiff from offering evidence or arguing that there was no probable cause to arrest Jim Zitzka for battery, or that they arrested Mr. Zitzka in retaliation for his speech, or in an effort to retaliate against plaintiff. In Motion *in Limine* No. 6, defendants seek to bar plaintiff from offering evidence the Mr. Zitzka was found not guilty of battery. Because plaintiff acknowledges that these two motions rise and fall together (Pl.'s Resp. at 7), we consider them together.

In response to Motion *in Limine* No. 3, plaintiff does not argue that she should be permitted to argue that defendants lacked probable cause to arrest Mr. Zitzka for battery or to retaliate against Mr. Zitzka for his speech. That is not surprising, as the Court on summary judgment held that the undisputed material facts showed that there was probable cause to arrest Mr. Zitzka, *Zitzka,* 743 F. Supp. 2d at 911-12, and that he could not pursue a retaliation claim because the defendant officers "would have arrested Mr. Zitzka even without a retaliatory motive." *Id.* at 922.

However, plaintiff seeks to offer evidence and argument that Mr. Zitzka's arrest was part of an effort to retaliate against *her* (Pl.'s Resp. at 3-5). Plaintiff argues that other courts have held that evidence of retaliation against a plaintiff's family member is admissible to show retaliation against the plaintiff even though the particular family member's claim was dismissed. For example, in *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332 (W.D. Pa. 2008), the parents of a minor high school student brought a Title IX action on their own behalf and on behalf of their daughter, alleging the school district retaliated against the student as well as the parents. This argument fails for two reasons.

*First*, the Seventh Circuit has held that a claim that "adverse action was taken against a person in retaliation for the conduct of that person's spouse should be analyzed under the First Amendment, as a violation of intimate association." *Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422, 433 (7th Cir. 2010) (citing *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999)). Plaintiff has not made a claim of intimate association in this case.

*Second*, in order for plaintiff to show that Mr. Zitzka was arrested in order to retaliate against plaintiff, she would have to offer evidence that this retaliatory motive was the "but for" cause of Mr. Zitzka's arrest. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 500-01 (7th Cir. 2010). However, we already have held that this "but for" standard was not met with respect to Mr. Zitzka's arrest for battery, as the undisputed facts show that defendants would have arrested him on that charge regardless of whether they had a retaliatory motive. *Zitzka*, 734 F. Supp. 2d at 922. We see no basis to allow plaintiff to pursue a claim that an arrest that was not retaliatory as to Mr. Zitzka nonetheless was retaliatory as to her. For these same reasons, evidence that Mr. Zitzka was acquitted of the battery charge may not be used as evidence of retaliation against plaintiff.

We therefore grant defendants' Motions *in Limine* Nos. 3 and 6.

## C.

**Defendants' Motion *in Limine* No. 5.** In this motion, defendants seek to bar any evidence or argument that plaintiff was found not guilty for disorderly conduct and criminal defacement of property, on the ground that the outcomes of those prosecutions are irrelevant to plaintiff's remaining claims in connection with those charges: a Fourth Amendment false arrest claim in connection with the disorderly conduct charge; a First Amendment retaliatory prosecution claim in connection with the disorderly conduct charge; and a First Amendment retaliatory arrest claim with respect to both the disorderly conduct and defacement charges.

If plaintiff had any viable malicious prosecution claims in connection with the charges for disorderly conduct and defacement, the outcome of the trials of those charges would be relevant. But, at summary judgment, the Court dismissed plaintiff's malicious prosecution claims on those charges. *Zitzka*, 743 F. Supp.2d at 926. While plaintiff has false arrest and retaliation claims that will be tried in connection with those charges, plaintiff has not explained how the disposition of the charges is relevant to these remaining claims.

To the contrary, plaintiff's argument in response to the motion *in limine* centers entirely on her arrests on these charges, and not their ultimate dispositions (Pl.'s Resp. at 5-7). Perhaps a reason for plaintiff doing so is that defendants, despite the more modest title of their motion, argue that plaintiff should be barred not only from offering the ultimate disposition of those charges but also should be barred from arguing that "defendants lacked probable cause for her arrest for criminal defacement *or that the criminal charges were otherwise improper*" (Defs.' Joint Br. at 7) (emphasis added). To the extent defendants seek to bar plaintiff from arguing to the jury that there was no

18

probable cause for that arrest, when the Court on summary judgment held that there was, *Zitzka*, 743 F. Supp. 2d at 927, we wonder why there was a need to make that request. To the extent that defendants seek to go farther and to bar plaintiff from arguing that this arrest was "otherwise improper," it is defendants who place themselves in conflict with the Court's ruling on summary judgment that the presence of probable cause does not bar plaintiff from pursuing a First Amendment retaliatory arrest claim on the charge of criminal defacement. As we explained above, we do not reconsider summary judgment rulings that are sought in the guise of motions *in limine*; and, even had defendants properly brought a motion *in limine* on the issue, we would stand by our prior ruling that probable cause is not an insuperable bar to a claim for retaliatory arrest under the First Amendment.

We therefore grant defendants' Motion *in Limine* No. 5, to the extent that it seeks merely to bar plaintiff from offering evidence or argument concerning the outcome of the prosecutions for disorderly conduct and defacement.

## D.

**Defendants' Motion *in Limine* No. 10.** In this motion, defendants seek to preclude the plaintiff's treating physicians and other health providers from offering any opinion that any of plaintiff's conditions were caused by the defendants' conduct, and to limit their testimony to that which has been properly disclosed under Fed. R. Civ .P. 26(a)(2)(A) and (C). Defendants argue that, none of those witnesses whom plaintiff may call reached such a causation opinion in the course of their treatment, and none of them submitted an expert report under Rule 26 stating such a causation opinion. Defendants argue that as a result, they cannot offer such an opinion at trial, citing *Meyers v. Amtrak*, 619 F.3d 729, 734-35 (7th Cir. 2009) (holding that "a treating physician who is offered

to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case' and thus is required to submit an expert report in accordance with Rule 26(a)(2)").

In response, plaintiff offers no evidence that any of her treaters opined that defendants' conduct was a cause of any of plaintiff's conditions. Moreover, plaintiff agrees that, in light of *Meyers*, she "has no objection to the Court entering an order to the effect that no medical care provider can testify as to an opinion of causation unless the provider rendered the opinion during the course of treatment" (Pl.'s Resp. at 7). Thus, it would appear that defendants' motion should be granted without more.

However, plaintiff argues the defendants' motion does not comport with *Meyers* because it asks the Court to "impose a Rule 26 standard on a fact witness" and is "an attempt by the Defendants to exclude testimony which is admissible" (Pl.'s Resp. at 7-8). We find this undeveloped argument unpersuasive. *First*, plaintiff does not identify what evidence she claims that defendants are improperly seeking to exclude by this motion. *Second*, the premise that a treating physician is an ordinary "fact" witness is misleading. Treating physicians are occurrence witnesses to the diagnosis of a patient's condition, diagnosis and treatment – but they are able to diagnose and treat a patient in a way that a lay person could not, because in fact they are experts in the way that is contemplated by Fed. R. Evid. 702. *Meyers* makes clear the line between when a physician who renders treatment may testify without a report (when he/she is merely testifying as an occurrence witness as to what observations, diagnoses and conclusions were reached during treatment) and when even a treater must provide the complete Rule 26 report (when he/she seeks to offer testimony that goes beyond

the physician's work as a treater). But, in both circumstances, the physician plainly is an expert under Rule 702.

We therefore grant defendants' Motion *in Limine* No. 10, and bar plaintiff's treaters from offering any opinions as to causation.

## CONCLUSION

Accordingly, for the reasons stated above, we (1) grant Plaintiff's Motions *in Limine* Nos. 3 , 6, 7 (in part), 8, 19 (in part) 20, 21 and 22 (in part); and (2) deny Defendants' Motions *in Limine* No. 1, grant Defendants' Motions *in Limine* Nos. 3, 6, 10 and 12, and grant Defendants' Motion *in Limine* No. 5 in part.

All counsel are responsible for advising their witnesses of these rulings, and to take all reasonable steps to ensure that the witnesses do not offer testimony or comment on any matters barred by these rulings. In the event one side contends that the other side has opened the door to inquiry into matters barred by these rulings, the side making that contention shall seek a sidebar and obtain advance approval of the Court before asking any questions or making any argument on matters barred by these rulings.

**ENTER:**

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATED:** October 7, 2011